**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | ) **Bankruptcy Case No.** 26-22713-JCM |
| | ) |
| Prime Therapy Holdings, Inc., *et al.*,[1] | ) **Chapter** 11 (Subchapter V) |
| **Debtors.** | ) **Jointly Administered** |
| | ) |
| Prime Therapy Holdings, Inc., *et al.*, | ) |
| **Movants,** | ) **Related Document No.** 77-8 |
| **vs.** | ) |
| PNC Bank, National Association and | ) |
| S&T Bank, | ) |
| **Respondents.** | ) **Document No.** 8 |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN THEIR EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND PAY BANK FEES, (II) WAIVE CERTAIN U.S. TRUSTEE REQUIREMENTS, AND (III) CONTINUE USING EXISTING CHECKS AND BUSINESS FORMS, (IV) PERFORM INTERCOMPANY TRANSACTIONS, AND (B) GRANTING RELATED RELIEF**

Upon the Motion[2] filed by the above-captioned debtors and debtors in possession (the "Debtor") for entry of an order (the "Order") (a) authorizing the Debtors to (i) maintain their existing bank accounts and cash management system, including authorizing the Debtors to continue to pay in the ordinary course of their business any undisputed prepetition bank fees and any postpetition bank fees in the ordinary course of business and consistent with past practices, (ii) waive certain requirements of the U.S. Trustee Guidelines, (iii) maintain existing business forms in the ordinary course of business, (iv) perform Intercompany Transactions; and (b) granting related relief; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number are: Prime Therapy Holdings, Inc. (3911); Rocky Mountain Physical Therapy, Inc. (3143); Baylife PT and Rehabilitation, Inc. (9934); Baylife Physical Therapy & Rehabilitation QPR, LLC (5805); and Baylife Physical Therapy & Rehabilitation BIA, LLC (0142). The lead Debtor's corporate address is 470 Johnson Road, Washington, PA 15301-8944.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

and the *Amended Standing Order of Reference from the United States District Court for the Western District of Pennsylvania*, dated October 16, 1984; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their bankruptcy estate, as contemplated by Bankruptcy Rule 6003; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their estate, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is **HEREBY ORDERED** that:

1. The Motion is **GRANTED** on a final basis as set forth in this Final Order. Any objections to the Motion not resolved or otherwise withdrawn are **OVERRULED**.

2. The Debtors are authorized, but not directed, to: (a) continue to use, in the same name and with the same account numbers, the Bank Accounts and Cash Management Banks in existence as of the Petition Date, identified on **Exhibit C** to the Motion, and to maintain their existing Cash Management System, substantially as described in the Motion, in the ordinary course of business and consistent with past practice; (b) treat their Bank Accounts for all purposes as debtor-in-possession accounts;

(c) to the extent of available funds, collect, concentrate, deposit funds in, and withdraw and disburse funds from the Bank Accounts in the ordinary course of Debtors' business in accordance with the Cash Management System by all usual means, including, but not limited to, checks, wire transfers, ACH transfers and debits, electronic funds transfers, and other debits; (d) use all pre-printed correspondence and Business Forms (including checks and letterhead) without reference to the Debtors' status as debtors in possession; (e) continue to make Intercompany Transfers between Debtors described in the Motion in the ordinary course of business in payment of amounts due for postpetition periods; and (f) pay Bank Fees as they arise in the ordinary course of business irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts. Notwithstanding the foregoing, nothing in this Paragraph 2 or elsewhere in this Order shall constitute authorization to use Cash Collateral, as defined in section 363(a) of the Bankruptcy Code, except to the extent separately authorized by consent of the applicable secured party or further order of this Court. Furthermore, any Intercompany Transfer authorized pursuant to this Order shall remain subject to all valid liens and security interests existing as of the Petition Date and to any applicable restrictions contained in any order governing the use of Cash Collateral. Nothing in this Order shall authorize the transfer of Cash Collateral from one Debtor to another except as separately authorized by consent of the applicable secured creditor or further Order of this Court.

3. Subject to the rights of any secured creditor and any separate order governing the use of Cash Collateral, the requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived. Payments escrowed and/or made

for tax payments, along with any intercompany transfers, shall be clearly delineated in Debtors' monthly operating reports.

4. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be. The Debtors shall designate the Bank Accounts as "Debtor in Possession Account(s)" and shall include the legend "Debtor in Possession" and the case number on all issued checks.

5. Subject to applicable bankruptcy or other law, all agreements existing between the Debtors and the Cash Management Banks as of the Petition Date shall continue to govern the postpetition banking relationship between the Debtors and the Cash Management Banks. All provisions of such agreements, including, without limitation, all termination, overdraft, fee, chargeback, collateral, setoff, recoupment, security interest, control, indemnification, rights, benefits and remedies afforded thereunder, shall remain in full force and effect absent further Order of the Court or agreement between the applicable Debtor and Cash Management Bank. Nothing contained in the Motion or this Order shall waive, impair, alter, limit, or prejudice any other right or remedy of any Cash Management Bank under any such agreement, any loan or other financing document, the Bankruptcy Code, or other applicable law. To the extent the terms of any such agreement conflict with the Bankruptcy Code, applicable

Bankruptcy Rules, or an Order of this Court, the Bankruptcy Code, Bankruptcy Rules, or such Order shall control.

6. The Debtors and the Cash Management Banks may, without further order of the Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business pursuant to the terms of any existing deposit agreements, including, without limitation, the closing of Bank Accounts or the opening of new bank accounts, and enter into any ancillary agreement, including deposit account control agreements, associated with the foregoing; provided, that the Debtors shall give notice within 14 days to the U.S. Trustee and any statutory committee appointed in these Chapter 11 Cases of the opening of any new bank account or closing of any Bank Account or entry into any ancillary agreement; provided further, that no Bank Account shall be closed, materially modified, or transferred to another depository, and no deposit account control agreement affecting any such Bank Account shall be terminated or modified, without at least five (5) business days' prior written notice to the Banks.

7. The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank. Any new bank accounts opened shall be at banks that have signed a Uniform Depository Agreement ("UDA") with the Office of the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee") or at banks that are willing to immediately sign a UDA. Debtor shall cause the depository to designate the same as a debtor-in-possession account. Nothing in this

Paragraph shall alter or impair any existing security interest, deposit account control arrangement, setoff right, or other right of the Banks respecting an existing Bank Account.

8. The Banks are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the obligations that the Debtors are authorized to pay pursuant to this Final Order, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, provided that sufficient funds are available in the Debtors' accounts to cover the checks and fund transfers. The Banks and other financial institutions may rely on the representations of the Debtors with respect to whether any check, item or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such bank or financial institution shall not have any liability to the Debtors, their estates, or any other party for acting in good faith reliance on such representations by the Debtors as provided for herein.

9. The Debtor will instruct the Cash Management Banks as to which checks, drafts, wire transfers (excluding any wire transfers that the Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored. Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored under an order of the Court, the Debtors shall not instruct nor request the Cash Management Banks to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date. Except as expressly authorized by this Order or another Order of this Court, no check, draft, wire, ACH transfer, or other debit issued or initiated prior to the Petition Date shall

be honored or paid. The Debtors shall not instruct or request any Bank to pay or honor any such item except to the extent expressly authorized by an Order of this Court.

10. In the course of providing cash management services to the Debtors, the Cash Management Banks are authorized, without further order of this Court, to deduct all applicable fees and expenses (including Bank Fees), whether arising prepetition or postpetition, from the appropriate Bank Accounts of the Debtors consistent with historical practice, and further, to charge back to the appropriate Bank Accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

11. The Banks are authorized to debit the appropriate Debtors' accounts in the ordinary course and without further order of this Court on account of (a) all checks drawn on the Debtors' accounts that have been cashed at such Bank's counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date and all ACH transactions, wire and other transfers that may have been initiated but not cleared on or before the Petition Date to the extent authorized by this Order or another Order of this Court ; (b) all checks or other items deposited in one of the Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent each Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank as to

service charges for the maintenance of the Cash Management System. The foregoing authorization is in addition to, and shall not limit, any other debit, chargeback, setoff, recoupment, or other right of a Bank preserved pursuant to Paragraph 5 of this Order.

12. Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by any of the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, to the extent of available funds, whether or not the Cash Management Banks believe the payment is authorized by an order of this Court. No bank shall be liable to the Debtors or their estate for honoring or dishonoring a prepetition or postpetition check or other item drawn on any of the Bank Accounts as a result of this Final Order, at the direction of the Debtors. Without limiting the foregoing, no Bank shall be liable to the Debtors, their estates, or any other party to the extent the Debtors fail to comply with this Order or any other applicable Order of this Court.

13. Any and all banks, including the Banks, are further authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (b) accept and hold the Debtors' funds in accordance with the Debtors' instructions; provided that the Cash Management Bank shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14. Nothing contained herein shall prevent the Cash Management Banks from modifying or terminating any Bank Accounts or related services in accordance with the

agreements governing such Bank Accounts or services unless otherwise required by applicable law, rule, or regulation.

15. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtors that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor or any person or entity, that existed as of the Petition Date. For the avoidance of doubt, nothing contained in the Motion or this Order constitutes consent by any secured creditor to the use of its Cash Collateral or authorization under section 363(c)(2) of the Bankruptcy Code to use any Cash Collateral.

16. The Debtors are authorized to issue postpetition checks, or to give effect to postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Bank Fees.

17. A copy of this Order will be served on Debtors' banks identified in **Exhibit C**.

18. Regarding any UDA banks that the Debtors use, the Debtors must immediately (a) contact each UDA Bank, (b) provide the UDA bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such UDA bank as being held by a debtor in possession in a bankruptcy case and provide the case number.

19. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

20. Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in the Motion or this Final Order shall be deemed: (a) an implication or admission as to the validity or priority of any claim against any of the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estate; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. For the avoidance of doubt, nothing in this Paragraph or elsewhere in this Order shall waive, limit, impair, or prejudice any right, claim, lien, defense, setoff, recoupment, or remedy of PNC Bank, National Association.

21. The requirements of Bankruptcy Rule 6004(a) are waived.

22. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

23. The Debtors are authorized to continue to perform the Intercompany Transactions in the ordinary course of business provided that nothing herein constitutes an admission as to the validity, priority, or status of any prepetition intercompany balance; provided further, that (a) all Intercompany Transactions shall remain subject to all valid liens and security interests existing as of the Petition Date; (b) nothing in this Paragraph authorizes the use or transfer of Cash Collateral except as separately authorized by consent of the applicable secured creditor or further order of this Court; and (c) any administrative expense status accorded hereunder shall be junior and subordinate to the valid, perfected, and enforceable liens, security interests, and claims of secured creditors in the Debtors' property and the proceeds thereof, and shall not be satisfied from Cash Collateral absent such consent or further order of this Court

24. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**BY THE COURT:**

Date: November 12, 2026

jlm

**The Honorable John C. Melaragno**
**United States Bankruptcy Judge**

SIGNED
11/12/26 9:07 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA