**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | ) **Bankruptcy Case No.** 26-22713-JCM |
| Prime Therapy Holdings, Inc., *et al.*,[1] | ) |
| **Debtors.** | ) **Chapter** 11 (Subchapter V) |
| | ) **Jointly Administered** |
| Prime Therapy Holdings, Inc., *et al.*, | ) |
| **Movants,** | ) **Related Document No.** 81, 92 |
| **v.** | ) |
| PNC Bank, N.A., | ) |
| **Respondent.** | ) **Document No.** |

**INTERIM ORDER GRANTING THE DEBTOR'S MOTION FOR AUTHORITY (I) TO OBTAIN SECURED POSTPETITION FINANCING AND (II) TO USE CASH COLLATERAL**

This matter came before the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Court") upon the *Expedited Motion for Interim and Final Orders Authorizing the Debtor (I) to Obtain Secured Postpetition Financing and (II) to Use Cash Collateral* (the "Motion") filed by the above-captioned debtors and debtors in possession seeking the entry of an interim order (this "Interim DIP Order") and a final order pursuant to 105(a), 361, 362, 363, 364, 503, 506(c), 507, and 552 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6004, and 9014; and Local Rule 4001-2 authorizing, *inter alia*, the Debtor to obtain secured postpetition financing from the Lender pursuant to the terms and conditions of the DIP Loan Agreement and to use Cash Collateral in accordance therewith; and an interim hearing on the Motion having been held before the Court on ______________, 2026 (the "Interim Hearing"); and upon the record made by

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Prime Therapy Holdings, Inc. (3911); Rocky Mountain Physical Therapy, Inc. (3143); Baylife PT and Rehabilitation, Inc. (9934); Baylife Physical Therapy & Rehabilitation QPR, LLC (5805); and Baylife Physical Therapy & Rehabilitation BIA, LLC (0142). The lead Debtor's corporate address is 470 Johnson Road, Washington, PA 15301-8944.

the Debtor at the Interim Hearing, including the admission into evidence of the Christoff Declaration; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. *Petition Date*. On the Petition Date, the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 the Bankruptcy Code with the Court. The Debtor remains a debtor in possession and has the right and powers to continue to operate its business assets, including its bank accounts, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. *Jurisdiction, Venue, and Statutory Predicates*. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings* Nunc pro Tunc entered by the U.S. District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A, D, and O). Venue is proper in this district under 28 U.S.C. §§ 1408–09. The Court may enter a final order consistent with Article III of the United States Constitution. The legal predicates for the relief requested in the Motion are sections 105(a), 361, 362, 363, 364, 503, 506(c), 507, and 552 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6004, and 9014; and Local Rule 4001-2.

3. *Notice.* Notice of the Motion, the relief requested therein, and the Interim Hearing was provided by the Debtor to: (a) the Office of the U.S. Trustee for the Western District of Pennsylvania; (b) the Debtor; (c) the Lender; (d) all secured creditors; (e) the

Office of the Attorney General of the Commonwealth of Pennsylvania; (f) the twenty largest unsecured creditors of the Debtor on a consolidated basis; (g) the Debtor's identified, interested taxing authorities, including the Internal Revenue Service; (h) the Debtor's identified, interested government and regulating entities; (i) other interested parties as identified by the Debtor; and (j) any known counsel for any of the foregoing (collectively, the "Notice Parties"). Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d) and all applicable Local Rules, and no further notice of the relief sought at the Interim Hearing is necessary or required.

4. *Debtor's Stipulations.* Without prejudice to the rights of a committee or other party in interest as set forth herein, the Debtor, on behalf of itself and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows (collectively, the "Stipulations"):

a. As of the Petition Date, the Debtor was a party or otherwise obligated under the Prepetition Loan Documents and was truly and justly indebted and liable to the Lender, without defense, objection, counterclaim, or offset of any kind, in the aggregate principal amount of not less than One Hundred Ninety Thousand Eighteen Dollars and 00/100 ($190,018.00) with respect to the Prepetition Term Loan.

b. The Prepetition Obligations constitute legal, valid, binding, and nonavoidable obligations against the Debtor and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other

claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable nonbankruptcy law or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Lender by or on behalf of the Debtor prior to the Petition Date under or in connection with any of the Prepetition Loan Documents is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable nonbankruptcy law or otherwise;

c. The liens and security interests granted by the Debtor under the Prepetition Loan Documents (collectively, the "Prepetition Liens") are: (i) legal, valid, binding, perfected, enforceable, on and security interests in the Prepetition Collateral to secure the Prepetition Obligations, (ii) not subject to avoidance, recharacterization, offset, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge, and (iii) after giving effect to this Interim DIP Order, subject and subordinate only to other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code).

d. The Lender is an affiliate and an insider of the Debtors.

e. ***Effective immediately upon the expiration of the Challenge Period***, the Debtor, on behalf of itself and its estate, forever and irrevocably releases, discharges, and acquits the Lender and the Lender's former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors,

shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description, solely arising out of, in connection with, or relating to the DIP Loan, the Post-Petition Loan Documents, the Prepetition Loan Documents, and/or the transactions contemplated hereunder or thereunder, including (i) any so-called "lender liability" or equitable subordination or disallowance claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, including but not limited to any Avoidance and Recovery Actions, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Lender, provided that the releases set forth in this section shall be limited to such claims arising prior to or including the date of the entry of this Interim DIP Order. The Debtor further waives and releases any defense, right of counterclaim, right of setoff, or deduction of the payment of the Prepetition Obligations or the DIP Obligations (as defined herein) that the Debtor now has or may claim to have against the Releasees arising out

of, connected with, or relating to any and all acts, omissions, or events occurring prior to the entry of this Interim DIP Order.

f. No portion of any of the Prepetition Obligations shall be subject to contest, attack, avoidance, impairment, disallowance, defense, counterclaim, recharacterization, reduction, recoupment, setoff, recovery, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

5. *Findings Regarding the DIP Loan.*

a. The Debtor seeks authority to (i) enter into the DIP Loan Agreement on the terms described herein and in the Post-Petition Loan Documents on an interim basis, pending entry of a final order granting the relief requested in the Motion (the "Final DIP Order"); and (ii) use Cash Collateral on the terms described herein to administer the Chapter 11 Case and fund the Debtor's operations. Notice of the final hearing on the Motion (the "Final Hearing") and Final DIP Order will be provided in accordance with this Interim DIP Order.

b. The Debtor has an immediate need to obtain credit on an interim basis pursuant to the DIP Loan and to use the Cash Collateral on an interim basis, in order to, among other things, permit the orderly continuation of its business, preserve the Debtor's going-concern value, make payroll and satisfy other working capital and general corporate purposes of the Debtor (including fees, costs, and expenses related to the Chapter 11 Case and the Post-Petition Loan Documents and capital expenditures, as and to the extent set forth in this Interim DIP Order and in accordance with the Budget and the Post-Petition Loan Documents). The ability of the Debtor to maintain business relationships with its vendors, suppliers,

and customers, pay its employees, and otherwise finance their operations requires the availability of working capital from the DIP Loan and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, and parties in interest. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business between entry of this Interim DIP Order through and including the Final Hearing (the "Interim Period") without the DIP Loan and authorized use of Cash Collateral.

c. The Debtor is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the Post-Petition Loan Documents and is unable to obtain adequate unsecured credit allowable under section 364(b) of the Bankruptcy Code as an administrative expense or having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code. The Debtors also is unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without (i) granting the Superpriority Claims[2] (as defined herein) and (ii) rolling up the Prepetition Bankruptcy-Related Loan amount into the DIP Loan outstanding under the DIP Loan Agreement on and subject to the terms and conditions set forth in this Interim DIP Order and the Post-Petition Loan Documents.

d. The terms and conditions of the DIP Loan pursuant to the Post-Petition Loan Documents (including the payment of fees contemplated

[2] The Lender has withdrawn its request for a lien on avoidance actions and proceeds in exchange for receiving Superpriority Claims.

thereunder), including the Cash Collateral, and pursuant to this Interim DIP Order are fair, reasonable, and the best available to the Debtor under the circumstances; are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration. The Lender, NaviMed Partners, LP and NaviMed Partners Executive Fund, LP, are an affiliate and the controlling equity holder of the Debtor. Because the Lender is an insider of the Debtor, the Court has subjected the DIP Loan and the Debtor's entry into the Post-Petition Loan Documents to heightened scrutiny rather than the ordinary business judgment standard. Having applied that heightened scrutiny, the Court finds that the DIP Loan satisfies the entire fairness standard: both the process by which the DIP Loan was negotiated and approved and the price and other terms of the DIP Loan are fair to the Debtor, its estate, and parties in interest, and the Debtor has carried its burden of demonstrating the good faith and inherent fairness of the transaction.

e. The Post-Petition Loan Documents and the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtor and the Lender, and all the Debtor's obligations and indebtedness arising under or in connection with the Post-Petition Loan Documents (as approved solely on an interim basis), this Interim DIP Order, and the amount of the funding authorized hereunder (collectively, the "DIP Obligations") shall be deemed to have been extended by the Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the

protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim DIP Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise. Any such reversal, modification, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder or any lien, claim, or priority authorized or created hereby. Any liens or claims granted to the Lender hereunder arising prior to the effective date of any such reversal, modification, or vacatur of this Interim DIP Order shall be governed in all respects by the original provisions of this Interim DIP Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

f. The Debtor has requested immediate entry of this Interim DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the interim relief set forth in this Interim DIP Order, the Debtor's estates and its business operations will be immediately and irreparably harmed. The borrowing of the DIP Loan and the use of the Cash Collateral, in accordance with this Interim DIP Order and the Post-Petition Loan Documents, are in the best interest of the Debtor's chapter 11 estate. Good cause has been shown for the immediate entry of this Interim DIP Order.

6. *Adequate Notice.* Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtor, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties. The Debtor has made reasonable efforts to afford the best notice possible under the circumstances, and no other notice is required in connection with the relief set forth in this Interim DIP Order.

7. *Authorization of the DIP Loan.*

a. The DIP Loan, including the roll-up of the Prepetition Bankruptcy-Related Loan, is hereby approved on an interim basis as set forth herein. The Debtor is hereby authorized (i) to enter into and perform under the Post-Petition Loan Documents on an interim basis, (ii) to borrow under the Post-Petition Loan Documents up to an aggregate principal amount of the DIP Loan consistent with the Budget up and until the Final Hearing, the proceeds of which shall be used for—subject to the terms of this Interim DIP Order, the Post-Petition Loan Documents, and the Budget—working capital and other general corporate purposes of the Debtor, including fees, costs, and expenses related to the Chapter 11 Case and the Post-Petition Loan Documents, capital expenditures, and payment of interest, fees, and expenses in connection with the DIP Loan, and (iii) to convert the Prepetition Bankruptcy-Related Loan amount into a Rolled-Up DIP Loan outstanding under the DIP Loan Agreement.

b. In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and empowered to perform all acts and to execute and deliver all instruments and documents that the Lender determines to be reasonably required or necessary (but solely with respect to such actions that are required or necessary during the Interim Period for the Debtor's performance of its obligations under the applicable Post-Petition Loan Documents, including:

i. The execution, delivery, and performance of the Post-Petition Loan Documents;

ii. The execution, delivery, and performance of one or more amendments, waivers, consents or other modifications to and under the Post-Petition Loan Documents (in accordance with the terms of the applicable Post-Petition Loan Documents and in such form as the Debtor and the Lender may agree), and no further approval of the Court shall be required for any amendment, waiver, consent, or other modification to and under the Post-Petition Loan Documents that does not materially and adversely affect the Debtor or that does not (A) shorten the scheduled Maturity Date of the DIP Loan; (B) increase the principal amount of the DIP Loan or the rate of interest payable on the DIP Loan; or (C) change any Event of Default, add any covenants, or amend the covenants therein, in any such case to be materially more restrictive on the Debtor; *provided, however*, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtor with the Court and delivered by the Debtor to the U.S. Trustee and counsel to any statutory committee of unsecured creditors (a "Committee") appointed in the Chapter 11 Case within three (3) Business Days of its effectiveness; and

iii. The performance of all other acts required under or in connection with the Post-Petition Loan Documents.

c. Upon the execution thereof, the Post-Petition Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim DIP Order and the Post-Petition Loan Documents. To the fullest extent permissible under the Bankruptcy Code, no

obligation, payment, transfer or grant of security by the Debtor under the Post-Petition Loan Documents or this Interim DIP Order shall be voidable, avoidable, restrained, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including under section 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transfer Act, or similar statute or common law) or subject to any defense, reduction, setoff, recoupment, or counterclaim.

d. All borrowings under the Post-Petition Loan Documents and all use of Cash Collateral shall be in compliance with the Budget and this Interim DIP Order, and the Debtor shall not use any portion of the proceeds of the DIP Loan or any Cash Collateral, directly or indirectly, in excess of the amounts set forth in the Budget (subject to any permitted variance agreed upon by the Debtor and the Lender). The Budget may be updated and amended from time to time in accordance with the Post-Petition Loan Documents, provided that the Debtor shall be required always to comply with the Budget as set forth in Post-Petition Loan Documents.

8. *Superpriority Claims*. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (collectively, the "Superpriority Claims") against the Debtor (without the need to file a proof of claim or request for payment) with priority over any and all administrative expenses, adequate protection claims, and all other claims against the Debtor now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any

and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment, which allowed claims shall be payable from all pre- and post-petition property of the Debtor. No priority claims are, or will be, senior to, prior to, or *pari passu* with the Superpriority Claims, any of the DIP Obligations, or any other claims of the Lender arising hereunder or under the Post-Petition Loan Documents or otherwise in connection with the DIP Loan.

9. *Carve-Out*.

a. As used herein, the "Carve-Out" means the aggregate amount of (i) all unpaid fees required to be paid in the Chapter 11 Case to the Clerk of the Court and to the office of the U.S. Trustee under 28 U.S.C. § 1930(a)(6); (ii) the reasonable unpaid fees, costs, and disbursements of professionals retained by the Debtors, the Subchapter V Trustee and any Committee in the Chapter 11 Case (collectively, the "Estate Professionals") that are provided for in the Budget and incurred prior to the delivery by the Lender of a Carve-Out Trigger Notice (as defined herein), and are allowed, if required, by the Court (after notice and hearing) under §§ 327, 330, or 363 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; and (iii) the reasonable unpaid fees, costs, and disbursements of the Estate Professionals that are incurred after the delivery of a Carve-Out Trigger Notice by the Lender that are allowed by the Court (after notice and hearing) under §§ 327, 330, or 363 of the Bankruptcy Code after application of any retainers being held by such

professionals, in an aggregate amount not to exceed $35,000 (the "Post-Default Carve-Out Cap"). As used herein, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Lender to the Debtor's counsel, any Committee counsel, and the U.S. Trustee, which notice may be delivered at any time following the occurrence and during the continuation of an Event of Default, expressly stating that the Post-Default Carve-Out Cap is triggered. If the Debtor cures the Event of Default giving rise to a Carve-Out Trigger Notice within five Business Days of the receipt thereof, such Carve-Out Trigger Notice shall no longer be of force and effect.

b. Immediately upon delivery by the Lender of a Carve-Out Trigger Notice in accordance with this Interim DIP Order, the Carve-Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtor for DIP Loans under the DIP Loan Agreement in an amount equal to the sum of the amounts set forth in the clauses of subparagraph (a)(i), (ii), and (iii) of this paragraph; *provided* that amounts in respect of the fees, costs, and disbursements of the Estate Professionals shall be advanced and drawn only after, and only to the extent of, such fees, costs, and disbursements that have been allowed by the Court pursuant to approved fee applications under sections 327, 330, or 363 of the Bankruptcy Code.

10. *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Interim DIP Order and without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the

possession or control by the Lender of any property, the following security interests in and liens and mortgages upon all property identified in clauses (a), (b), and (c) below (collectively, the "DIP Collateral") are hereby granted to the Lender, subject only to the Carve-Out in all respects (all such liens and security interests granted to the Lender pursuant to this Interim DIP Order and the Post-Petition Loan Documents, the "DIP Liens"):

a. Liens Junior to Certain Existing Liens. First-priority Liens on all Assets[3] of the Debtor, to the extent that the Assets (i) are not subject to valid, perfected, and non-avoidable liens and security interests immediately before the Petition Date, or (ii) by operation of section 552 of the Bankruptcy Code, are not subject to valid, perfected, and non-avoidable liens and security interests on or after the Petition Date, pursuant to section 364(c)(2) of the Bankruptcy Code; and Liens on all Assets of the Debtor (subordinate only to valid, perfected, and non-avoidable liens and security interests in favor of third parties in existence on the Petition Date or to valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), pursuant to section 364(c)(3) of the Bankruptcy Code.

11. *Roll Up.* ***Effective immediately upon the expiration of the Challenge Period***, (i) the entire outstanding balance of the Prepetition Obligations shall be deemed to have automatically, without notice or any other action, been rolled up into, be

[3] As defined in the DIP Loan Agreement, "Assets" means "all of the assets of the Bankruptcy Estate, of any type whatsoever, whether or not reflected in the financial records of the Debtor, including, subject to entry of a Final [DIP] Order, all Avoidance and Recovery Actions." DIP Loan Agreement § 1.2(e).

substituted and exchanged for, and be deemed to be the Rolled-Up DIP Loan; and (ii) the Rolled-Up DIP Loan shall be deemed made on the Effective Date (as defined in the DIP Loan Agreement) and shall constitute a DIP Loan for all purposes hereunder under the Post-Petition Loan Documents and a superpriority claim.

12. All borrowings under the Post-Petition Loan Documents and all use of Cash Collateral shall be in compliance with the Budget, as the same may be modified from time to time to the extent provided for in the Post-Petition Loan Documents, and shall not deviate from the Budget by more than fifteen percent (15%), measured on a cumulative basis over the trailing four-week period and first tested as of the end of the fourth full week following the Petition Date (the "Permitted Variance").

13. *Events of Default*. The occurrence of any of the following events, unless waived by the Lender in writing, shall constitute an event of default under this Interim DIP Order (each, an "Event of Default"): (a) any interim or final order of this Court governing cash collateral is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which shall materially and adversely affect the rights of the Lender; (b) the Chapter 11 Case is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code pursuant to a final order of the Court, the effect of which has not been stayed; (c) the Debtor fails to operate in accordance or otherwise comply with the Budget (after taking into account Permitted Variances); (d) a default or event of default occurs under the Post-Petition Loan Documents; or (e) the Debtor fails to otherwise materially comply with the terms of this Interim DIP Order.

14. *Remedies After Event of Default*. The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the Lender

to exercise the default remedies provided for in the Post-Petition Loan Documents, which are hereby authorized and approved, subject to the following:

a. Upon the occurrence and during the continuance of an Event of Default, and the Lender's giving of three Business Days' prior written notice of the occurrence and continuation of such Event of Default (such three-Business Day period, the "Remedies Notice Period") to the Debtor (with a copy to counsel to the Debtor, counsel to the Lender, the U.S. Trustee, and counsel to any Committee), the Lender shall have all rights and remedies against the Collateral respectively provided for in the applicable Post-Petition Loan Documents, Prepetition Loan Documents, and this Interim DIP Order. During the Remedies Notice Period, the Debtors shall be permitted to (i) use the proceeds of the DIP Loan and/or the Cash Collateral for expenditures in accordance with the Budget and this Interim DIP Order, (ii) contest the occurrence and/or continuance of any Event of Default, and (iii) seek and obtain an emergency hearing before the Court. The Lender's delay or failure to exercise rights and remedies under the Post-Petition Loan Documents or this Interim DIP Order shall not constitute a waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement.

b. At the end of the Remedies Notice Period, unless and until the Court has entered an order to the contrary (or has scheduled an expedited hearing as contemplated under subparagraph (a) above), or as otherwise agreed to between the Debtor and the Lender, the Debtor's rights to use the DIP Loan or Cash

Collateral shall immediately cease pending further order of the Court, except as necessary to fund the Carve-Out.

15. *Limitation on Charging Expense against Collateral.* Subject to and effective upon entry of the Final DIP Order, except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Lender, and no such consent shall be implied from any other action or inaction by the Lender.

16. *Payments Free and Clear.* Subject to the reservation of rights set forth herein, any and all payments or proceeds remitted to the Lender pursuant to the provisions of this Interim DIP Order shall be received free and clear of any claim, charge, assessment, or other liability, other than the Carve-Out.

17. *Cash Collateral*. The Debtor is hereby authorized to use the Cash Collateral during the Interim Period for working capital and general corporate purposes, including fees, costs, and expenses related to the Chapter 11 Case and the Post-Petition Loan Documents, capital expenditures, and payment of interest, fees, and expenses in connection with the DIP Loan, in accordance with the terms and conditions of this Interim DIP Order and subject to compliance with the Budget; *provided, however*, that except on the terms of this Interim DIP Order, the Debtor is not authorized to use the Cash Collateral. The Debtor's use of Cash Collateral in which PNC Bank, N.A. ("PNC") may assert an interest, and any adequate protection of PNC's asserted interests, shall be addressed in

the Debtor's separately filed motion for authority to use cash collateral, and nothing in this Interim DIP Order shall be deemed to grant, determine, or prejudice any adequate protection for PNC. The DIP Liens granted to the Lender under this Interim DIP Order shall be junior and subordinate to the valid, perfected, and non-avoidable prepetition liens of PNC.

18. *With respect to the liens, claims, and security interests of PNC, and not withstanding any term or condition of this Interim Order to the contrary:*

**Priority.** The DIP Liens and Superpriority Claims are junior and subordinate to (a) PNC's pre-petition liens and security interests, wherever located, and in all proceeds, products, rents and profits, (b) all post-petition liens, security interests, and/or Section 507(b) claims granted or to be granted to PNC as adequate protection in connection with the use of cash collateral, including, without limitation, a lien and security interest in all assets of Debtor Rocky Mountain Physical Therapy, Inc. ("PNC Adequate Protection"), and (c) PNC's deposit-account liens and rights of setoff and recoupment. No Superpriority Claim may be paid from, or satisfied out of, the pre- and/or post-petition collateral of PNC.

**No waiver of adequate protection**. Section 2.1(g) of the DIP Loan Agreement shall be of no effect as to PNC Adequate Protection, and the Debtors may grant PNC Adequate Protection liens and claims notwithstanding anything in the DIP documents to the contrary. Paragraph 8 of the Interim Order is amended to exclude PNC Adequate Protection claims.

**Cash collateral.** The Debtors may use PNC's cash collateral only under a separate order after notice to PNC or with PNC's written consent, and not by operation of the Interim Order.

**Setoff and accounts.** Nothing in the Interim Order impairs PNC's contractual security interest in deposits, its Section 553 setoff and recoupment rights, or its rights under contractual agreement or applicable Pennsylvania law regarding depository accounts, and nothing requires PNC to release or subordinate them.

**Stipulations and releases.** No stipulation, finding, admission, or release binds PNC. PNC's rights as to NaviMed's liens, claims, and any avoidance actions are preserved.

**Waivers limited.** All waivers under Sections 506(c), 510, and 552(b) of the Bankruptcy Code apply only to the DIP Lender's collateral, only on entry of a final order, and do not apply to PNC's collateral or affect otherwise affect PNC"s rights. The DIP Lender shall not exercise its remedies against assets in which PNC claim an interest absent five (5) business' days written notice to PNC and upon motion and order of Court.

19. **Reservation**. All PNC rights and remedies are reserved. In the event of a conflict, this Addendum controls over the Interim Order and the DIP loan documents.

*Perfection of DIP Liens*.

a. The Lender is hereby authorized, but not required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction and to take possession of or control over, or take any other action in order to, validate and perfect the DIP Liens granted to the Lender hereunder, in each case subject to the terms of the Post-Petition Loan Documents; and the automatic stay is hereby lifted solely to permit such authorized actions. Whether or not the Lender chooses to file such financing statements, mortgages, notices of lien, or similar instruments or take possession of or control over, or otherwise

confirm perfection of, the DIP Liens, such DIP Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or, subordination as of the date of entry of this Interim DIP Order.

b. A certified copy of this Interim DIP Order may, in the discretion of the Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim DIP Order for filing and recording.

c. The Debtor shall execute and deliver to the Lender all such agreements, financing statements, instruments and other documents as the Lender may reasonably request to evidence, confirm, validate, or perfect the DIP Liens.

20. *Preservation of Rights Granted Under the Order.*

a. Unless all DIP Obligations shall have been indefeasibly paid in full in cash, it shall constitute an Event of Default and a termination of the right to use the Cash Collateral (i) if the Debtor seeks, or if there is entered, any modification of this Interim DIP Order without the prior written consent of the Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the Lender; or (ii) an order is entered converting or dismissing the Chapter 11 Case.

b. If any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (i) the validity, priority, or enforceability of any DIP Obligations incurred prior to the effective date of such reversal, stay, modification, or vacatur;

or (ii) the validity, priority, or enforceability of the DIP Liens. Notwithstanding any such reversal, stay, modification, or vacatur, any use of the Cash Collateral, any DIP Obligations incurred by the Debtor to the Lender prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim DIP Order, and the Lender shall be entitled to all of the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim DIP Order, the Post-Petition Loan Documents (with respect to all DIP Obligations), and uses of the Cash Collateral.

c. Except as expressly provided in this Interim DIP Order or in the Post-Petition Loan Documents, the Carve-Out, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the Lender granted by this Interim DIP Order and the Post-Petition Loan Documents shall survive and shall not be modified, impaired, or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Case or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Case, and pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim DIP Order and the Post-Petition Loan Documents shall continue in the Chapter 11 Case and in any Successor Cases, and the Carve-Out, the DIP Liens, the DIP Obligations, the Superpriority Claims, and the other administrative claims granted pursuant to this Interim DIP Order, and all other rights and remedies of the Lender granted by this Interim DIP Order and the Post-

Petition Loan Documents, shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

21. *Effect of Stipulations and Findings on Third Parties.*

a. The Stipulations contained in this Interim DIP Order shall be binding upon the Debtor and its estate under all circumstances. The Stipulations, Findings and admissions contained in this Interim DIP Order shall be binding upon all other parties in interest unless (a) a party in interest (including any Committee or any chapter 7 or chapter 11 trustee appointed or elected the Debtor) (each, a "Challenge Party") that successfully seeks and obtains standing (on a final basis) to do so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including in this paragraph) (such action, a "Challenge") within 75 days after entry of this Interim DIP Order (the "Challenge Period"); and (b) an order is entered and becomes final in favor of the Challenge Party sustaining any such Challenge duly made in accordance with the foregoing.

b. If no Challenge is timely filed in respect of the Prepetition Obligations, (i) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, recovery, for all purposes in the Chapter 11 Case and any subsequent chapter 7 case; (ii) the Prepetition Liens on the collateral securing the Prepetition Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in herein, not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment,

or recovery; and (c) the Prepetition Obligations, the Lender, and the Prepetition Liens on the collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by any party in interest (including the Committee), and every party in interest shall be enjoined from seeking to exercise the rights of the Debtor's estate, including any successor thereto (including any estate representative or a chapter 7 or 11 trustee appointed or elected for the Debtor). Nothing in this Interim DIP Order shall confer standing on any party in interest to assert any Claims or Defenses or otherwise bring any cause of action, and such standing shall remain solely with the Debtor unless otherwise ordered by the Court.

c. If any Challenge is timely filed, the Stipulations, Findings and admissions contained in paragraphs 4 (Debtors' Stipulations), paragraph 5 (Findings) and 17 (Cash Collateral) of this Interim DIP Order shall nonetheless remain binding and preclusive (as provided in the third sentence of this paragraph) on all parties in interest, including any Committee, except as to any such findings and admissions that were expressly and ultimately successfully challenged in such Challenge, if any, and solely to the extent expressly set forth in the final order sustaining such Challenge.

22. *Limitation on Use of DIP Loans and DIP Collateral*. The Debtor shall use the DIP Loans and the Cash Collateral solely as provided in this Interim DIP Order, the Budget, and the Post-Petition Loan Documents. The aggregate amount advanced to the Debtor under the New Money DIP Loan shall not exceed $204,982, and, together with the $190,018 Rolled-Up DIP Loan, the DIP Facility shall not exceed $395,000, in each

case in accordance with the Budget. Loan advances shall be made only as, and to the extent, necessary to fund the Debtor's expenses set forth in the Budget for the applicable period, and in each case only to the extent that Cash Collateral and the Debtor's other available cash are insufficient to pay such expenses as they come due. In the event that a receivable has not been collected by the Debtor as anticipated in the Budget, additional funds may be advanced to make up any shortfall; provided, however, that any deviation from the Budget shall require the immediate filing of a revised Budget that clearly indicates the amount of each and every loan advance. In the event the Debtor, the Lender, or any other party in interest does not believe the foregoing amount is sufficient to fund the Debtor's operations, a request for an expedited hearing to clarify the necessary borrowing will be granted, and any such request shall include the calculations supporting the proposed modified amount. Subject to successful challenge, notwithstanding anything herein or in any other order of this Court to the contrary, none of the DIP Loan, the DIP Collateral, the Cash Collateral, or the Carve-Out may be used to (a) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the Post-Petition Loan Documents, or the liens or claims granted under this Interim DIP Order, or the Post-Petition Loan Documents; (b) assert any claims and defenses or any other causes of action against the Lender or the Lender's agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (c) prevent, hinder, or otherwise delay the Lender's assertion, enforcement, or realization on the DIP Collateral in accordance with the Post-Petition Loan Documents or this Interim DIP Order; (d) seek to modify any of the rights granted to the Lender hereunder or under the Post-Petition Loan Documents or the Prepetition Loan Documents, in the case of each

of the foregoing clauses (a) through (d), without such party's prior written consent; or (e) pay any amount on account of any claims arising prior to the Petition Date (except with respect to the roll up of the Prepetition Bankruptcy-Related Loan) unless such payments are (i) approved by an order of this Court and (ii) permitted under the Post-Petition Loan Documents.

23. *Professional Expenses*. The Debtor is directed to pay all reasonable and documented prepetition and post-petition fees and out-of-pocket expenses due and outstanding to the Lender related to the Chapter 11 Case provided that such fees and expenses are not subject to a bona fide dispute. Payment of such fees and expenses shall not be subject to allowance by the Court. Professionals for the Lender shall not be required to submit invoices in any particular format. No attorney or advisor to the Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

24. *Insurance*. The Debtor shall maintain insurance post-petition consistent with its prepetition practices. The Debtor shall maintain all insurance on all Collateral to the extent required under the Prepetition Loan Documents and Post-Petition Loan Documents.

25. *Section 552(b)*. Subject to the entry of a Final DIP Order, the Lender shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code.

26. *Order Governs.* In the event of any inconsistency between the provisions of this Interim DIP Order and the Post-Petition Loan Documents, the provisions of this Interim DIP Order shall govern.

27. *Binding Effect; Successors and Assigns.* The terms and provisions of this Interim DIP Order shall be binding upon all parties in interest in the Chapter 11 Case, including the Lender and the Debtor and their respective successors and assigns, including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate of any of the Debtors, and shall inure to the benefit of the Lender and the Debtor and their respective successors and assigns.

28. *Limitation of Liability*. In determining to make any DIP Loan under the Post-Petition Loan Documents, permitting the use of Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to this Interim DIP Order or the Post-Petition Loan Documents, nothing in this Interim DIP Order shall be construed to impose on the Lender any liability thereon by reason of being deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute). Furthermore, nothing in this Interim DIP Order or in the Post-Petition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Lender of any liability for any claims arising from the prepetition or post-petition activities of the Debtor.

29. *Proofs of Claim*. The Lender shall not be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claim allowed herein. Any order

entered by the Court in relation to the establishment of a bar date for any claim (including administrative claims) in the Chapter 11 Case or any Successor Case shall not apply to the Lender.

30. *Credit Bid*. The Lender is entitled to credit bid up to the total unpaid amount of all Post-Petition Debt, pursuant to sections 363(k) and 1129(b) of the Bankruptcy Code, at any sale of Assets, Collateral, or Post-Petition Collateral, whether it is a Section 363 Sale or a sale in connection with confirmation or consummation of a plan of reorganization (including a plan of liquidation).

31. *No Waiver*. The failure of the Lender to seek relief or otherwise exercise their rights and remedies under this Interim DIP Order, the Post-Petition Loan Documents, or the Prepetition Loan Documents, or otherwise, as applicable, shall not constitute a waiver of the Lender's rights hereunder, thereunder, or otherwise. Except as expressly provided herein, the entry of this Interim DIP Order and the entry of the Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the Lender under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court.

32. *No Third-Party Rights*. Except as explicitly provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, third party, or incidental beneficiary.

33. *Effectiveness*. This Interim DIP Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim DIP Order.

34. *Final Hearing*. The Final Hearing is scheduled for _______________, 2026, at [__]:[__] [a.m./p.m.], prevailing Eastern Time, before this Court.

35. The Debtor shall promptly serve a copy of this Interim DIP Order (which shall constitute adequate notice of the Final Hearing) on the parties that were given notice of the Interim Hearing, on any other party that has filed a request for notice in the Chapter 11 Case, and on any Committee (or its counsel) after the same has been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections upon counsel to the Debtor, the U.S. Trustee, and counsel to any Committee no later than _______________, 2026, at [__]:[__] [a.m./p.m.], prevailing Eastern Time.

**By the Court,**

___________________________
**John C. Melaragno, Judge**
**United States Bankruptcy Court**